# IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF ALABAMA NORTHERN DIVISION

| | | |
|---|---|---|
| **RICARDO VILLALTA, an individual** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Case No. 2:25-cv-207** |
| | ) | |
| **MARK HARRELL, in his individual and official capacity,** | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| **Defendants.** | ) | |

## COMPLAINT

## <u>PARTIES</u>

1.    Plaintiff **Ricardo Villalta** is an individual over the age of nineteen (19) years.

2.    Defendant **Mark Harrell** is, upon information and belief, a resident and the sheriff of Autauga County, Alabama. Defendant Harrell is being sued in his individual and official capacity as Sheriff of Autauga County.

## <u>JURISDICTION & VENUE</u>

3.    This Court has original federal question jurisdiction under 28

U.S.C. § 1331 and 28 U.S.C. § 1343 of Villalta's 42 U.S.C. § 1983 claim(s) because Defendant Harrell, while acting under the color of state law, deprived Villalta of rights and privileges secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States as set forth herein, or otherwise failed to prevent or to aid in preventing such wrongs with knowledge that they were about to occur and with power to prevent.

4.    This Court has supplemental jurisdiction under 28 U.S.C § 1367 of all state law claims which naturally flow from the § 1983 claim(s) set forth herein.

5.    Venue is appropriate in this judicial district because all the facts and circumstances made the basis of this complaint occurred in the Northern Division of the Middle District of Alabama.

## FACTS COMMON TO ALL COUNTS

## I.    Request for an "Immigration Detainer"

6.    The Autauga County Sheriff's Office ("Sheriff's Office") routinely, and as part of its custom and practice, conducts background checks on individuals that are being booked into the Autauga County

Metro jail.

7.    The Autauga County Metro Jail is operated and controlled by the Autauga County Sheriff, and he has legal custody and charge of all prisoners committed thereto.[1]

8.    If the Sheriff's Office believes that an individual is unlawfully in the United States, they contact Immigration and Customs Enforcement ("ICE"), within the Department of Homeland Security ("DHS").

9.    If an individual is unlawfully in the United States, ICE has the prerogative and discretion to request that the Sheriff's Office "detain" or "hold" an individual that is about to be release from jail.

10.    The most common reasons individuals are released from the Autauga County Metro Jail is because the individual posts a bond or because the jail receives an order from a Judge ordering the individual's release.

11.    An ICE detainer can request that a person suspected of being

---

[1] *See* ALA. CODE § 14-6-1 ("The sheriff has the legal custody and charge of the jail in his or her county and all prisoners committed thereto, except in cases otherwise provided by law. The sheriff may employ persons to carry out his or her duty to operate the jail and supervise the inmates housed therein for whose acts he or she is civilly responsible. Persons so employed by the sheriff shall be acting for and under the direction and supervision of the sheriff and shall be entitled to the same immunities and legal protections granted to the sheriff under the general laws and the Constitution of Alabama of 1901, as long as such persons are acting within the line and scope of their duties and are acting in compliance with the law.").

unlawfully in the United States be detained up to 48 hours after the individual is due to be released from state custody so that ICE can pick up the individual and process him for deportation.

12.    An ICE Detainer request must be formalized through the submission of official documents to the Sheriff's Office. The request must be in writing on DHS Form I-247, known as an "Immigration Detainer".

13.    The Sheriff's Office has no power to issue an ICE Detainer.

14.    The Sheriff's Office has no independent way to verify whether an individual is lawfully or unlawfully present in the United States.

15.    The ICE Detainer must be requested by ICE.

16.    The ICE Detainer is a request and not an order.

17.    ICE Detainers are not the same as an arrest warrant. An ICE Detainer is simply a request from ICE to the Sheriff's Office or a local law enforcement agency to hold someone on their behalf.

18.    Neither ICE, DHS, nor the United States exercise direct control over the Sheriff's Office.

19.    The Sheriff's Office has discretion to follow or ignore an ICE Detainer request.

20.    If ICE issues a detainer request, ICE must pick up the

individual from the Sheriff's Office within 48 hours after an individual is due to be released from the Sheriff's Office after posting bond or a judicial order of release.

21.    Customarily, the Sheriff's Office notifies ICE that the individual is due to be release, subject to the ICE Detainer.

22.    The 48-hour detainment does not include Saturdays, Sundays and/or holidays.

23.    An ICE Detainer is not renewable.

24.    An ICE Detainer may not extend beyond 48 hours.

25.    An ICE Detainer must be presented to the individual that is the subject of the detainer.

26.    The Sheriff's Office is not authorized to hold an individual beyond 48 hours.

27.    The Sheriff's Office may not hold an individual in custody, without a valid warrant or a court order.

## II.    Detention of Ricardo Villalta

28.    At all material times, Mr. Villalta was and is a **<u>legal</u>** permanent resident of the United States.

29.    On January 27, 2024, while at a gas station in Prattville,

Alabama, Mr. Villalta was arrested by the City of Prattville's Police Department and charged with public intoxication.

30.    That same day, Mr. Villalta was taken to the Autauga County Metro Jail in Autauga County, Alabama, where he was booked into jail by the Sheriff's Office.

31.    At the time of his arrest and booking, Mr. Villalta was carrying a valid Alabama-issued driver's license and other identifications, which readily confirmed Villalta's lawful presence in the United States.

32.    While in custody of Autauga County Sheriff Mark Harrell, ICE was notified of Mr. Villalta's detention at the Autauga County Metro Jail.

33.    During his booking, Mr. Villalta was handed a telephone by the Sheriff's Office to speak with an immigration agent.

34.    Mr. Villalta spoke with the immigration agent and provided his name, date of birth, social security number, and an explanation of how he was lawfully in the United States.

35.    Also that same day, Mr. Villalta's wife attempted to post a bond for her husband, but the Sheriff's Office advised her that he would not be released because ICE had "placed" an ICE Detainer on Mr. Villalta.

36.    The Sheriff's Office represented to Mr. Villalta and his family that, per ICE's request, Mr. Villalta would be turned over to ICE if he posted of a bond or at the end of his municipal case.

37.    The Sheriff's Office prohibit Mr. Villalta from bonding out of jail and detained him while his case was pending with the City of Prattville.

38.    Ten days later, on February 7, 2024, the Sheriff's Office transported Mr. Villalta to the City of Prattville's Municipal Court. He appeared before the Judge to answer to the charge of public intoxication.

39.    Mr. Villalta pleaded guilty in open court to public intoxication. The Judge immediately sentenced Mr. Villalta, which included a fine, credit for time served, and ordering his release from jail. In fact, the judge even told Mr. Villalta that he would either be released that same night or the following morning.

40.    Mr. Villalta was immediately taken back to the Autauga County Metro Jail but was not released. He was instead booked back into the jail without explanation.

41.    On or about February 8, 2024, Mr. Villalta's son, Ricardo Villalta Jr., went to the Autauga County Metro Jail and spoke with

Sheriff Harrell's deputies, agents, and/or employees to inquire about his father's release.

42.     Ricardo Villalta Jr. told the deputies that they had to release his father based on the court's order. However, he was told by a deputy and agent of the Sheriff's Office that "that only happens in movies."

43.     The Sheriff's Office did not release Mr. Villalta until March 5, 2024.

44.     Consequently, Mr. Villalta was unlawfully and illegally detained and imprisoned for 27 days after he was sentenced to time served and ordered to be released from the Autauga County Metro Jail.

45.     Each day, Mr. Villalta asked about his release, but was given no information or explanation.

46.     During some or all of the 27 days where he was wrongfully imprisoned in the Autauga County Autauga Metro jail, Mr. Villalta shared a cell with an inmate who threatened to kill him and performed disturbing and grotesque acts in the cell. For example, Mr. Villalta's cellmate cut a whole in his sleeping mattress, filled it with water and white bread saved from the bologna sandwiches served in the jail, and then engaged in sex acts with the mattress.

47.    Mr. Villalta complained to the Sheriff's deputies, agents, and/or employees about his cellmate's behavior, but those complaints were ignored.

48.    At all relevant times, Mr. Villalta was, and remains, lawfully present in the United States, including during the unlawful detention.

49.    Mr. Villalta was deprived his liberty.

50.    While awaiting release, Mr. Villalta lost weight due to stress and emotional anguish.

51.    Sheriff Harrell and those "acting for and under the direction and supervision of" Sheriff Harrell discriminated against Mr. Villalta based on his race and/or national origin.

52.    Sheriff Harrell and those "acting for and under the direction and supervision of" Sheriff Harrell unlawfully seized Mr. Villalta's person by detaining him without any cause, after he was ordered release by the municipal judge.

53.    Sheriff Harrell and those "acting for and under the direction and supervision of" Sheriff Harrell unlawfully denied Mr. Villalta his freedom and constitutionally-guaranteed due process of the law.

54.    Sheriff Harrell and those "acting for and under the direction

and supervision of" Sheriff Harrell falsely arrested and imprisoned Mr. Villalta.

55.    Sheriff Harrell and those "acting for and under the direction and supervision of" Sheriff Harrell negligently and wantonly detained and falsely imprisoned Mr. Villalta.

56.    Sheriff Harrell and those "acting for and under the direction and supervision of" Sheriff Harrell were negligent in the hiring, training, and retention of deputies, agents, and/or jail employees.

57.    Sheriff Harrell and those "acting for and under the direction and supervision of" Sheriff Harrell violated Mr. Villalta's constitutional rights, and discriminated against him based on his race, ethnicity, and/or national origin.

58.    As a direct proximate result of the above actions by Sheriff Harrell and those "acting for and under the direction and supervision of" Sheriff Harrell, Mr. Villalta was injured, including but not limited to the following injuries: emotional distress, pain and suffering, mental anguish, loss of wages, loss of enjoyment of life, and loss of liberty.

## COUNT ONE
## Fourth and Fifth Amendment Violation (42 U.S.C. § 1983)

59.    The Fourth Amendment to the U.S. Constitution prohibits

"unreasonable searches and seizures," and the Fifth Amendment provides that no person shall be "deprived of life, liberty, or property, without due process of law."

60.     Under 42 U.S.C. § 1983, "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable."

61.     Sheriff Harrell and those "acting for and under the direction and supervision of" Sheriff Harrell, all while acting under color of law, arrested and held Mr. Villalta from February 7, 2024, to March 5, 2024 without cause, warrant, or a valid ICE Detainer.

62.     Sheriff Harrell and those "acting for and under the direction and supervision of" Sheriff Harrell represented to Mr. Villalta and his

family that ICE had requested an ICE Detainer, when in fact that was false.

63.    Sheriff Harrell and those "acting for and under the direction and supervision of" Sheriff Harrell caused an ICE Detainer to be issued against Mr. Villalta, which was intended to deprive Mr. Villalta of his liberty. The ICE Detainer was issued without probable cause to believe that Mr. Villalta was unlawfully in the United States.

64.    Sheriff Harrell and those "acting for and under the direction and supervision of" Sheriff Harrell held Mr. Villalta beyond the allowable 48 hours under which an ICE Detainer is valid.

65.    Holding Mr. Villalta at all, including but not limited to without an ICE Detainer, constituted an unreasonable seizure and deprivation of life and liberty in violation of Mr. Villalta's Fourth and Fifth Amendment rights and in violation of Due Process.

66.    The issuance of the ICE Detainer constituted an unreasonable seizure and deprivation of life and liberty in violation of Mr. Villalta's Fourth and Fifth Amendment rights and in violation of Due Process.

67.    Sheriff Harrell and those "acting for and under the direction and supervision of" Sheriff Harrell arrested Mr. Villalta by continuing to

hold him after the legal ground for his custody expired without cause.

68.    As a consequence of the actions of Sheriff Harrell and those "acting for and under the direction and supervision of" Sheriff Harrell, Mr. Villalta suffered violations of the Fourth Amendment to the U.S. Constitution, which prohibits "unreasonable searches and seizures" and provides that "no Warrants shall be issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Mr. Villalta further suffered violations of the Fifth Amendment to the U.S. Constitution, which prohibits the deprivation of life and liberty without due process of law. Pursuant to the incorporation doctrine, the due process clause of the Fourteen Amendment makes the Fourth and Fifth Amendments applicable to state and local governments.

69.    As a proximate and reasonably foreseeable result of the actions of Sheriff Harrell and those "acting for and under the direction and supervision of" Sheriff Harrell, Mr. Villalta suffered injuries, humiliation, emotional distress, pain and suffering, mental anguish, loss of wages, loss of liberty, loss time and was inconvenient.

## COUNT TWO
## Fourteenth Amendment Violation (42 U.S.C. § 1983)

70.    Sheriff Harrell and those "acting for and under the direction and supervision of" Sheriff Harrell unlawfully arrested Mr. Villalta by violating the due process clause of the Fourteenth Amendment to the U.S. Constitution and committing the common law tort of unlawful or false arrest, which violated Villalta's Fourth and Fifth Amendment rights. *See Campbell v. Johnson*, 586 F.3d 835, 840 (11th Cir. 2009).

71.    Sheriff Harrell and those "acting for and under the direction and supervision of" Sheriff Harrell, all while acting under color of law, arrested and held Mr. Villalta after he was no longer in lawful custody on state or municipal criminal charges. The Fourteenth Amendment Due Process Clause includes the "right to be free from continued detention after it was or should have been known that the detainee was entitled to release." *Id.* at 840 (citing *Cannon v. Macon County*, 1 F.3d 1558, 1563 (11th Cir. 1993), modified on other grounds, 15 F.3d 1022 (1994)).

72.    Sheriff Harrell and those "acting for and under the direction and supervision of" Sheriff Harrell, all while acting under color of law, intended to confine Mr. Villalta and arrested him with deliberate indifference to his unlawful arrest. Sheriff Harrell and those "acting for

14

and under the direction and supervision of" Sheriff Harrell were aware of a risk of serious harm and disregarded that risk by actions beyond mere negligence. Mr. Villalta was aware of his confinement. Sheriff Harrell and those "acting for and under the direction and supervision of" Sheriff Harrell were not empowered under Alabama law or any other authority to arrest and detain Mr. Villalta based on a perceived and false civil immigration violation.

73.    Sheriff Harrell and those "acting for and under the direction and supervision of" Sheriff Harrell, all while acting under color of law, caused Mr. Villalta to be detained at the Autauga County Metro Jail for nearly a month after he was entitled to be released and after their authority to detain him on criminal charges had ceased.

74.    Sheriff Harrell and those "acting for and under the direction and supervision of" Sheriff Harrell did not have probable cause to detained Mr. Villalta.

75.    Sheriff Harrell and those "acting for and under the direction and supervision of" Sheriff Harrell effected an unreasonable seizure and deprivation of liberty in violation of Mr. Villalta's rights without Due Process.

76.    As a proximate and reasonably foreseeable result of the actions of Sheriff Harrell and those "acting for and under the direction and supervision of" Sheriff Harrell, Mr. Villalta suffered injuries, humiliation, emotional distress, pain and suffering, mental anguish, loss of wages, loss of liberty, loss time and was inconvenient.

## COUNT THREE
## Alabama False Imprisonment

77.    Sheriff Harrell and those "acting for and under the direction and supervision of" Sheriff Harrell unlawfully detained Mr. Villalta.

78.    Sheriff Harrell and those "acting for and under the direction and supervision of" Sheriff Harrell wrongfully restrained Mr. Villalta's freedom.

79.    Mr. Villalta's unlawful detention and restraint lasted for approximately one month.

80.    Mr. Villalta lost time, lost wages, endured physical discomfort, was inconvenienced, suffered injury to his physical and mental health and was deprived of his liberty.

81.    The harms and losses suffered by Mr. Villalta were caused through no fault of his own, but rather by the willful and reckless conduct of Sheriff Harrell and those "acting for and under the direction and

supervision of" Sheriff Harrell.

82.    As a proximate and reasonably foreseeable result of the actions and false imprisonment by Sheriff Harrell and those "acting for and under the direction and supervision of" Sheriff Harrell, Mr. Villalta suffered damages, including but not limited to, injuries, humiliation, emotional distress, pain and suffering, mental anguish, loss of wages, loss of liberty, loss time and was inconvenient.

## COUNT FOUR
## Negligence

83.    Sheriff Harrell and those "acting for and under the direction and supervision of" Sheriff Harrell had a duty to act reasonably and with care for the rights and safety of others.

84.    Sheriff Harrell and those "acting for and under the direction and supervision of" Sheriff Harrell had a duty to follow the constitution of the United States and Alabama.

85.    Sheriff Harrell and those "acting for and under the direction and supervision of" Sheriff Harrell had a duty to only detain individuals through the authority of a valid warrant and/or ordered by the court.

86.    Sheriff Harrell and those "acting for and under the direction and supervision of" Sheriff Harrell had a duty not to discriminate based

on race, ethnicity, or national origin.

87.    Sheriff Harrell and those "acting for and under the direction and supervision of" Sheriff Harrell had a duty to properly and reasonably hire, train, supervise, and retain their deputies, employees, and/or agents.

88.    Sheriff Harrell and those "acting for and under the direction and supervision of" Sheriff Harrell negligently breached their duties.

89.    As a proximate cause of the said negligent breaches of duty, Mr. Villalta suffered damages including, but not limited to, injuries, humiliation, emotional distress, pain and suffering, mental anguish, loss of wages, loss of liberty, loss time and was inconvenient.

## COUNT FIVE
## Wantonness

90.    Sheriff Harrell and those "acting for and under the direction and supervision of" Sheriff Harrell had a duty to act reasonably and with care for the rights and safety of others.

91.    Sheriff Harrell and those "acting for and under the direction and supervision of" Sheriff Harrell had a duty to follow the constitution of the United States and Alabama.

92.    Sheriff Harrell and those "acting for and under the direction and supervision of" Sheriff Harrell had a duty to only detain individuals

through the authority of a valid warrant and/or ordered by the court.

93.    Sheriff Harrell and those "acting for and under the direction and supervision of" Sheriff Harrell had a duty not to discriminate based on race, ethnicity, or national origin.

94.    Sheriff Harrell and those "acting for and under the direction and supervision of" Sheriff Harrell had a duty to properly and reasonably hire, train, supervise, and retain their deputies, employees, and/or agents.

95.    Sheriff Harrell and those "acting for and under the direction and supervision of" Sheriff Harrell wantonly or, with knowledge that harm would likely or probably result, recklessly breached their duties.

96.    As a proximate cause of the wanton and reckless breaches of their duty by Sheriff Harrell and those "acting for and under the direction and supervision of" Sheriff Harrell, Mr. Villalta suffered damages including but not limited to injuries, humiliation, emotional distress, pain and suffering, mental anguish, loss of wages, loss of liberty, loss time and was inconvenient.

## **PRAYER FOR RELIEF**

**WHEREFORE, PREMISES CONSIDERED,** Ricardo Villalta respectfully requests that this Honorable Court assume jurisdiction of

this action and grant the following relief:

a.    Award compensatory and punitive damages against Mark Harrell in an amount to be determined by the jury;

b.    Award prejudgment interest on any award of damages to the extent permitted by law;

c.    Award reasonable attorneys' fees and costs pursuant to 42 § 1988 and under other applicable law; and

d.    Grant any other equitable relief the Court or jury deem just and proper.

**PLAINTIFF HEREBY REQUESTS A TRIAL BY JURY.**

Dated:      March 18, 2025

*/s/ Sigfredo Rubio*
Sigfredo Rubio
(ASB-5403-D62R)
Attorney for Ricardo Villalta
RUBIO LAW FIRM, P.C.
490 Wildwood N. Circle, Suite 150
Birmingham, AL 35209
Phone: (205) 443-7858
frubio@rubiofirm.com

*/s/ F. Taylor Rouse*
F. Taylor Rouse
(ASB-8709-R53M)
Attorney for Ricardo Villalta

RYAN & ROUSE, LLC
525 Madison Street SE, Suite 210
Huntsville, AL 35801
Phone: (256) 801-1000
taylor@alabamalaw.com

**PLEASE SERVE THE FOLLOWING BY CERTIFIED MAIL:**

Sheriff Mark Harrell
Autauga County Sheriff's Office
162 W 4th Street
Prattville, AL 36067